UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cr-80053-Rosenberg/Reinhart

UNITED STATES OF AMERICA,

v.

ALSTON ORLANDO LEROY WILLIAMS,

Defendant.
_____/

FILED by _____ D.C.

APR 0 3 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## PRETRIAL DETENTION ORDER

The Court, pursuant to 18 U.S.C. § 3142, commonly known as the Bail Reform Act of 1984, hereby ORDERS the Defendant, Alston Orlando Leroy Williams, detained pursuant to the provisions of Sections (b), (e), and (f).

The Government moved for pre-trial detention of Defendant on the bases that he is a serious risk of flight or nonappearance and a danger to the community. After conducting a detention hearing in this case on March 27, 2018, the Court orders that Defendant be detained and finds that no condition or combination of conditions will reasonably assure the appearance of Defendant or the safety of the community as required.

The Court makes the following findings of fact with respect to this order for detention:

Factors:

    a)    The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.

Defendant is charged by Indictment with possession with sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(2) (Count 1); sex trafficking of an adult by means of

force, threats of force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(2) (Counts 2-4); and forced labor, in violation of 18 U.S.C. § 1589(a) (Count 5). If convicted of Count 1, Defendant is facing a mandatory minimum of 10 years in prison up to life in prison, up to a lifetime term of supervised release, and up to a $250,000 fine. If convicted of Counts 2, 3, or 4, Defendant is facing a mandatory minimum of 15 years in prison up to life in prison, up to a lifetime term of supervised release, and up to a $250,000 fine per count. Finally, if convicted of Count 5, Defendant is facing up to 20 years in prison, up to five years of supervised release, and up to a $250,000 fine. The statutory rebuttable presumption in 18 U.S.C. § 3142(e)(3)(D) applies in this case.

  b) The weight of the evidence against Defendant.

The evidence against Defendant is substantial. The Court takes judicial notice of the information contained in the Indictment. The following evidence was established by the Criminal Complaint, the Government's proffer, and the cross-examination of FBI Special Agent Peter Angell.

On November 28, 2017, a victim who will be referred to as "R" reported to law enforcement that she was the victim of human trafficking. Law enforcement set up a fake "date" with Defendant for R through text messages. Defendant brought R to a hotel and also had a second victim, "G", with him in the car. Law enforcement then had the opportunity to interview R after Defendant left. When R texted Defendant that she was done with her "date," Defendant and G returned to the hotel. At that point, law enforcement took Defendant into custody, searched his car incident to arrest, and interviewed G.

R told law enforcement the following. She began living with Defendant when she was 18 years old and in high school. For the last two to three years she has lived with Defendant at his

mother's house. G also lived with them. R and Defendant had a sexual relationship, as did G and Defendant. Defendant began prostituting R when she was 18 years old, first through an agency and then directly through backpage.com ads. Defendant always required R to give him any money she made through prostitution. R has been arrested for prostitution several times in the presence of Defendant. G was the "slave of the house" and was required to cook and clean. She was not permitted to leave the home by herself. None of the girls were ever permitted to carry around money; Defendant and the clients provided for them. R believed that Defendant would kill her if she did not work as a prostitute. Defendant depended on R to make money, as she was the most successful prostitute. He often physically abused R and the other girls, and he refused to take them to the hospital afterwards. Defendant also pointed a firearm at some girls and threatened their families. Defendant had several weapons. After the 2017 hurricanes, Defendant took R and G to St. Thomas and made them complete manual labor on his mother's property there.

G told law enforcement the following. She met Defendant when she was 16 years old, and they had a sexual relationship while she was a minor. Defendant forced G to get an abortion after he impregnated her. When G turned 18, she began to work for a prostitution agency. She later began prostituting by posting ads on backpage.com. Defendant directed G to post the ads, drove her to and from "dates," and kept all of the money G made. G stopped prostituting because she made less money than R and subsequently became the "slave of the house." Defendant beat G, used a Taser on her, and hit her with a stick-like object. G had to ask Defendant for everything as she had no access to money.

Law enforcement later tracked down a third victim, referred to by the Government as "Victim #1." Victim #1 told law enforcement that she met Defendant in 2007 when she was

approximately 16 years old.  She then became his girlfriend and had a sexual relationship with him while she was 16.  Defendant forced Victim #1 to have two abortions.  He also forced her to become a prostitute while she was still a minor, drove her to and from dates, and took the money Victim #1 earned.  Once Defendant turned 18, she began prostituting more regularly and worked for two agencies and a brothel.  Defendant would not let Victim #1 leave, physically abused her, and threatened her family.  After Victim #1 left Defendant, he tried to find her.

When law enforcement executed a search warrant at Defendant's residence, they located an office that R and G had both described.  In the office was a safe with over $12,000 in cash inside, different forms of identification for R, G, and other women, and firearms and ammunition.  When law enforcement searched Defendant's car incident to arrest, they found knives, a bat, nunchucks, and other weapons.

Defendant gave a recorded, post-*Miranda* statement.  He denied living off of R's prostitution income, accused the girls of lying, and stated that the girls made the decision to prostitute themselves.  Defendant simply drove them to and from "dates" to keep them safe.  He admitted that he did use a taser on R and G in a "playful manner."

c) The history and characteristics of Defendant.

The Court takes judicial notice of the Pretrial Services Report.  Defendant was born in St. Thomas, USVI, in 1976.  He has been residing in Florida for 25 years and has been residing at his current address in Lake Worth, Florida, since July 2014.  The Lake Worth home is owned by his mother.  Defendant is single and has no children.

Defendant completed his high school diploma online.  He has been unemployed for two years, but he previously worked in various customer service positions.  Defendant owns no property, but he does own two vehicles.  His driver's license was suspended in February 2018.

Defendant does not have a U.S. passport and has never traveled outside of the United States.

        d)       The criminal history of Defendant.

Defendant's criminal history began in 1995 when he was 18 years old. Defendant has been convicted of aggravated battery on a pregnant woman, false imprisonment, battery, and directing or transporting for the purpose of lewdness. In addition, he has been arrested for, but not convicted of, disorderly conduct (multiple times), driving while license suspended or revoked (multiple times), assault, procuring a person under 18/prostitute, living on the earnings of a prostitute, directing transport for the purpose of prostitution, and deriving support—proceeds of prostitution. Defendant has also been arrested for failure to appear and violation of probation in the past.

        e)       The likelihood of Defendant's appearance in court if released.

The Court finds that there is a serious risk that Defendant will flee, or fail to appear in court, if released. In light of the statutory rebuttable presumption, the nature of the offense, the substantial weight of the evidence against Defendant, the substantial prison term Defendant faces if convicted, the fact that the grand jury has already make a finding of probable cause, Defendant's lack of verifiable, legitimate employment, his history of failure to appear and violation of probation, and his recent travel to St. Thomas, the Court finds that the Government has shown by a preponderance of the evidence that Defendant is a serious risk of flight or nonappearance. The Court also finds that Defendant has not rebutted the statutory rebuttable presumption that no condition or combination of conditions of release will assure his appearance in court.

        f)       The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release.

The Court also finds that there is no condition or combination of conditions of release

which will reasonably assure the safety of the community if Defendant is released. In light of the Government's evidence against Defendant, the fact that the grand jury has already make a finding of probable cause, the nature of the charges against Defendant, which involve prostitution of multiple women including a minor, Defendant's criminal history, which involves violence and domestic violence, his pattern of similar criminal activity, and safety concerns for the community and Defendant's victims, the Court finds that the Government has shown by clear and convincing evidence that Defendant is a danger to the community. The Court also finds that Defendant has failed to rebut the statutory presumption of detention.

Accordingly, it is hereby **ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE and ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 3rd day of April, 2018.

William Matthewman
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE