UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-CR-80053-ROSENBERG

**UNITED STATES OF AMERICA**

**vs.**

**ALSTON ORLANDO LEROY WILLIAMS,**

    **Defendant.**
_____/

## NOTICE OF PROFFER AND MEMORANDUM OF LAW

COMES NOW, the United States of America, by and through its undersigned Assistant

United States Attorney, and provides the following proffer and memorandum of law regarding the

admissibility of Victim 4 – T.L.'s travel to the Bahamas.

**FACTUAL PROFFER**

1.       The Government expects that Victim 4 –T.L. will testify regarding a particular

incident involving her arrest in the Bahamas, while the Defendant recruited, enticed, harbored,

transported, provided, or obtained Victim 4 – T.L., knowing force, fraud or coercion, would be

used to cause Victim 4 – T.L. to engage in a commercial sex act.  She will testify regarding the

years of mental, physical and coercive abuse that she suffered and that she had to perform

commercial sex acts in order to make money for the defendant such that he would not harm her.

2.       In 2006, T.L. met a girl (Witness G) who advised T.L. that she (Witness G) was

drug trafficking in the Bahamas and invited T.L to do the same.  T.L. found this potential

moneymaking endeavor enticing because, as she will testify, the more money she made to the

Defendant, the less he hurt her.  The Defendant affirmed T.L.'s engaging in this act and returned

T.L.'s green card back that he was holding so she could travel.  Witness G paid for TL's ticket on a day cruise from Florida to the Bahamas.

3.      T.L. had no intention of trafficking narcotics from the Bahamas.  T.L. had been advised and believed she was only going to learn from Witness G as to what T.L. would do if she decided to be a part of it.  However, upon arriving in the Bahamas, TL met up with Witness G and her male cousin, and was strapped with cocaine to her leg.  When T.L. got to the port in the Bahamas, she was stopped and arrested.  Witness G and her cousin got through the checkpoint.

4.      T.L. was jailed for two or three days when she called the Defendant, who wired $5,000 to pay for the release of TL.  T.L. then flew back to Florida and was paroled in to the United States, because she only had her green card since 1992.  Upon arriving in Florida, T.L. returned to the Defendant.  That night he had T.L. working as a prostitute.  T.L. will testify that in return for bonding her out of jail, T.L. felt that she owed something to the Defendant, and was one of the many reasons she prostituted for the Defendant.

**MEMORANDUM OF LAW**

5.      "Other criminal acts are intrinsic," for example, when they are "necessary preliminaries to the crime charged," are "necessary to complete the story of the crime on trial" or "provide context relevant to the criminal charges," are "inextricably intertwined," or "arose out of the same series of transactions as the charged offense."  *United States v. Basham*, 562 F.3d 302, 326 (4th Cir. 2009) (quoting Fed. R. Evid. 404(b)).

6.      For the government to introduce 404(b) evidence, it must demonstrate: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." *United States v.*

*Culver*, 598 F.3d 740, 748 (11th Cir. 2010) (internal citation omitted).

7.      The acts of T.L. going to the Bahamas to commit drug trafficking are important to elicit in the trial against the Defendant.  His encouraging her to traffic in narcotics, his bailing her out of jail, and her feelings that she owed him something in return, are an important factor as to why T.L. prostituted for the Defendant.  Without this part of the story, the Jury may not understand one of the original sources for T.L. to be in fear or coerced by the Defendant.

8.      Additionally, when T.L. arrives\d back into the United States, she was paroled. This caused the Defendant consternation because of his fear that a federal agency would be checking in on T.L. at his residence.  As T.L. will testify, this could have brought "unnecessary heat" to the defendant.  For this reason, he encouraged her to get a fake ID, which she did and used.  T.L. was later arrested for identity theft and placed on probation.  The Defendant then required T.L. to move out until she was off her probation.  Because of her shaky immigration status, T.L. was arrested in 2018, when she gave a statement to the police in this case.  Thus, it is apparent, that the Bahamian incident set the stage for the immigration issues that the Defendant held over T.L.'s head to coerce her to continue to commit commercial sex acts.

9.      But even if this incident is not intrinsic to the case, it is certainly evidence admissible under Fed.R.Evid. 404(b).  This incident will be used to prove the Defendant's plan to commit the crimes alleged.  That is, that this incident was used by the Defendant in his plan to have dominion and control over T.L. such that he inflicted coercion to have T.L. perform commercial sex acts.

Wherefore, the United States of America, hereby requests this Honorable Court to allows T.L. to testify regarding this incident in the Bahamas as it is intrinsic to the house or

admissible under Fed.R.Evid 404(b) as evidence of his plan to have T.L. commit commercial sex acts.

> Respectfully submitted,
> ARIANA FAJARDO ORSHAN
> UNITED STATES ATTORNEY
>
> By:   s/ *GREGORY SCHILLER*_____
> Gregory Schiller
> Assistant United States Attorney
> Fla. Bar. 048477
> 500 S. Australian Ave., Suite 400
> West Palm Beach, FL 33401
> P: 561-209-1045
> E: gregory.schiller@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of this pleading was filed via the Court's electronic filing system on December 2, 2018.

> *s/ Gregory Schiller*___
> Gregory Schiller
> Assistant United States Attorney