IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 18-CR-80053-RLR

UNITED STATES OF AMERICA

v.

ALSTON ORLANDO LEROY WILLIAMS

**GOVERNMENT'S MOTION
FOR RESTITUTION**

The United States of America, by and through the United States Attorney for the Southern District of Florida, moves this Court to enter an order in this case granting the victims restitution in the preliminary amount of 703,300, and payable in full immediately. This amount is justified under 18 U.S.C. § 1593.

FACTUAL AND PROCEDURAL SUMMARY

This Court is very familiar with the facts of this case having presided over the three-week long jury trial in December 2018.  In brief, Alston Orlando Leroy Williams (hereinafter "Williams") was indicated for trafficking women beginning in 2005.  Williams trafficked T.L. from 2005 through 2014, D.L. from 2008 through 2012, D.R. from 2007 through December 2016, R.C. from 2011 to 2017, G.R.L. from 2015 through 2017, and K.C. in 2015.  After trial, a jury convicted Williams of sex trafficking of D.L. as a minor, sex trafficking of D.L. by force fraud or coercion, sex trafficking of G.R.L., sex trafficking of D.R. as a minor, sex trafficking of D.L. by force fraud or coercion and obstruction of a human trafficking investigation (DE 160).

Victims D.L, G.R.L. and D.R. are entitled to restitution.

ARGUMENT

A. **Restitution in Sex Trafficking Cases – TVPA and MVRA**

Congress enacted the Trafficking Victims Protection Act of 2000 (TVPA) to provide a

1

comprehensive set of laws to combat human trafficking on the federal level.  In relevant part, the

Act criminalized commercial sex trafficking of adult victims by force, fraud and coercion.  18

U.S.C. § 1591.  The TVPA has three objectives: (1) prevention of human trafficking; (2)

prosecution of traffickers; and (3) protection of the victims.  *See* Pub.L. No. 106-386, § 102(a),

114 Stat. 1488 (2000), codified as amended in 22 U.S.C. § 7101(a).  The TVPA also created one

of the most expansive mandatory restitution schemes under federal law, in an acknowledgment

that: "[Full restitution] is critical to restoring [the trafficking] victim[s]' dignity, helping them gain

power back from their exploiters who took advantage of their hope for a better life.  [It] . . . attack[s]

the greed of the trafficker and the idea of a human being as a commodity.  It is a way to ensure

that victims receive access to justice." *United States v. Sabhani*, 599 F.3d 215, 259-260 (2d Cir.

2010).

Congress has specifically authorized restitution for sex trafficking victims in 18 U.S.C. §

1593, and the court is empowered under 18 U.S.C. § 3663(a)(1) to require restitution whenever a

defendant is convicted under Title 18, which includes the offense of conviction, 18 U.S.C. § 2421.

*United States v. Harper*, 2017 WL 552631, *2 (D. Kansas 02/10/2017).

Title 18, United States Code, Section 1593(a) requires this Court to "order restitution for

any offense under this chapter," which includes the offenses of conviction in Counts 1, 2, 5, 9, 10,

and 11.  *See United States v. Fu Sheng Ko*, 620 F. 3d 1158, 1164 (9th Cir. 2010) (observing "the

Trafficking Act mandates restitution that includes a defendant's ill-gotten gains"); *United States

v. Webster*, 2011 WL 8478276, at *3 (9th Cir. 2011) (recognizing "[t]he statutory language is clear

that mandatory restitution includes not only the victims' actual losses, but also the defendant's ill-

gotten gains"); *see also United States v. Baston*, 818 F. 3d 651, 665-66 (11th Cir. 2016) (affirming

restitution award under 18 U.S.C. § 1593 for "money that the victim earned while prostituting for

the defendant," and concluding that the district court erred in not awarding an additional $400,000

in restitution for extraterritorial trafficking conduct); *United States v. Cortes-Castro*, 511 Fed.

App'x 942, 946 (11th Cir. 2013) (affirming district court's decision to order restitution in the

amount of over $1.2 million in a sex trafficking case, noting that it was "mandated by statute");

*United States v. Mammedov*, 304 Fed. App'x 922, 927 (2d Cir. 2008) (stating that "the express

terms of 18 U.S.C. § 1593 require that the victims in this case, *i.e.*, persons who engaged in

commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding

that their earnings came from illegal conduct") (emphasis in original).

   **B.   The TVPA Mandates Restitution for Sex Trafficking Victims Such as D.L., G.R.L., and D.R.**

   United States Code, Title 18, Section 1593, provides that the Court "shall order restitution

for any offense under this chapter."  18 U.S.C. §1593(a).  The restitution order "shall direct the

defendant to pay the victim . . . the full amount of the victim's losses."  Those losses are defined

to include "the greater of the gross income or value to the defendant of the victim's services or

labor or the value of the victim's labor as guaranteed under the minimum wage and overtime

guarantees of the Fair Labor Standards Act  (29 U.S.C. § 201) *et seq*."  *See* 1593(b)(1),(3).   The

amount of restitution to be paid must be proved by the government by a preponderance of the

evidence.  18 U.S.C. § 1593(b)(2) ("an order of restitution under this section shall be issued and

enforced in accordance with section 3664 . . . ."); 18 U.S.C. § 3664(e) ("Any dispute as to the

proper amount or type of restitution shall be resolved by the court by the preponderance of the

evidence.  The burden of demonstrating the amount of the loss sustained by a victim as a result of

the offense shall be on the attorney for the government.").  "The preponderance standard should

be applied in a practical, common-sense way." *See United States v. Savoie*, 985 F.2d 612, 617 (1st

Cir. 1993). A restitution calculation may be supported by hearsay so long as the hearsay has sufficient indicia of reliability. *Id.*

Section 1593(b)(3) defines the victim's losses as the greater of the value rendered to the defendant *or* the value of the victim's labor as determined by the Fair Labor Standards Act. *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1164 (9th Cir. 2010) ("[T]he Trafficking Act mandates restitution that includes a defendant's ill-gotten gains"); see also *United States v. Webster*, No. 08-3-311, 2011 U.S. App. LEXIS 26438, *9 (9th Cir. 2011). Courts have most often used the "ill-gotten gains" concept in determining the amount of mandatory restitution in commercial sex trafficking context due to the difficulty in using the FLSA formulas in this type of labor. In calculating restitution pursuant to Section 1593, courts have used various methods to estimate the value of the victim's labor, including relying upon victims' sworn testimony about work they performed and prices charged for such work, and evidence of work performed gathered during the course of the government's investigation.

Regarding the proper calculation and determination of restitution, § 1593(b)(2) requires that any order of restitution be "issued and enforced in accordance with section 3664." Under 18 U.S.C. § 3664(e), the government bears the burden of establishing the victim's losses by a preponderance of the evidence. *See United States v. Hasson*, 333 F. 3d 1264, 1276 n.14 (11th Cir. 2003). "The amount of restitution can be determined on the basis of evidence heard during trial, undisputed statements in the Presentence Investigation Report, or evidence presented at the sentencing hearing." *United States v. Roberts*, 464 Fed. App'x 796, 802 (11th Cir. 2012); *see also Robinson*, 508 Fed. App'x at 871 (affirming restitution order for sex trafficking victim based upon trial testimony that "revealed the amount charged for [the victim's] services and the amount of time she worked for [the defendant]").

4

This Court "need only estimate, based on facts in the record, the victims' losses with some reasonably certainty." *Webster*, 2011 WL 8478276, at *3 (citing *United States v. Doe*, 488 F. 3d 1154, 1160 (9th Cir. 2007) (internal quotation marks omitted)).   "'So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution.'"  *United States v. Futrell*, 209 F. 3d 1286, 1292 (11th Cir. 2000) (quoting *United States v. Savoie*, 985 F. 2d 612, 617 (1st Cir. 1993)); *see also United States v. Palmer*, 643 F. 3d 1060, 1067-68 (8th Cir. 2011) (affirming award of $200,000 to a sex trafficking victim and noting that "the district court was only required to make a reasonable estimate, not establish the victim's future treatment costs with certainty").   The amount of restitution need not "be proven with exactitude" because "determining the dollar amount of a victim's losses attributable to the defendant will often be difficult" and "such a determination will inevitably involve some degree of approximation. . . ."  *In re Sealed Case*, 702 F. 3d 59, 66 (D.C. Cir. 2012).

For instance, in *United States v. Charles Nash*, CR12-23 RSM, Judge Martinez's restitution figures were based upon the sworn grand jury testimony of the defendant's sex trafficking victims, corroborated by Backpage.com advertisements and hotel records, about the length of time they performed sex work for the defendant, the average number of clients they had per day, and the average price charged per client.   The restitution figures were not exact accountings of the work performed and the prices charged, but rather the Court's best estimation based upon the evidence. This method of calculating restitution subsequently was affirmed by the Ninth Circuit.   See *United States v. Nash*, 558 Fed. Appx. 741, 742 (9th Cir. 2014) ("the district court did not err by relying on the victims' sworn statements and the corroborating extrinsic evidence to establish the amounts earned and the time periods during which the victims were under Nash's control.  The district court

appropriately estimated, based upon the facts in the record, the victims' losses with some reasonable certainty."). *See also* <u>Webster</u> at *9 (multiplying the number of weeks trafficked times the average number of days worked per week times the average number of dates per day times $150, the minimum amount charged per date); <u>United States v. Lewis</u>, 791 F. Supp. 2d 81, 92 (D.D.C. 2011) (calculating value of victim S.H.'s services as $400 x 914, the average amount (between $300 and $500) earned by one victim for the number of days (914) she worked for defendant, resulting in $365,600 recoverable as ill-gotten gains).

## C. Restitution Demands and Burden of Proof

The government seeks restitution for (1) the victims' lost earnings, and (2) the victims' future medical expenses incurred as a result of this case.

These victims are entitled to *mandatory* restitution in "the full amount of the victim's losses." 18 U.S.C. § 1593. Section 1593 defines the "full amount of the victim's losses" to include "the gross income or value to the defendant of the victim's services or labor." *Id.* § 1593(b)(3). It also includes all restitution recoverable under 18 U.S.C. § 2259, such as "any costs incurred by the victim for . . . medical services relating to physical, psychiatric, or psychological care," "lost income," and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3). In other words, the victim is entitled to (1) the defendant's ill-gotten gains plus (2) any losses she incurred, including the cost of past and future medical or psychological care. *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012).

The government must establish a restitution amount by a preponderance of the evidence. 18 U.S.C. § 3664(e). The calculation need not be perfect. "Rather, the government must establish the amount of the victim's loss with 'reasonable certainty.'" *United States v. Johnson*, 680 F. App'x 194, 200 (4th Cir. 2017) (quoting *United States v. Laney*, 189 F.3d 954, 967 n.14 (9th Cir.

1999)). "[S]ome degree of approximation' is acceptable," and courts should "resolve uncertainties with a view towards achieving fairness to the victim." *United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012) (quoting *United States v. Monzel*, 641 F.3d 528, 540 (D.C. Cir. 2011)) (quotation marks omitted).

"Moreover, when determining the appropriate amount of restitution, courts have determined that they 'may consider hearsay evidence that bears minimal indicia of reliability so long as the defendant is given an opportunity to refute that evidence.'" *Johnson*, 680 F. App'x at 200 (quoting *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997)) (accepting a letter from the victim's guardian relaying the consensus opinion among the victim's counselors about her likely future counseling needs).

## D. Restitution Sought for D.L., G.R.L., and D.R.

### A. *The Victims are Entitled to Restitution of the Gross Income the Defendant Earned from Prostituting Them.*

The victims are entitled to the gross income of the money the defendant made prostituting the victims. 18 U.S.C. § 1593(b)(3). The fact that those earnings came from prostitution does not change that conclusion. The statute states unequivocally that restitution "shall . . . include the . . . gross income . . . to the defendant of the victim's services" and further requires courts to "order restitution for *any offense under this chapter*." 18 U.S.C. § 1593(a), (b)(3) (emphasis added).

Chapter 77 includes sex trafficking and conspiracy to commit sex trafficking. *Id.* §§ 1591, 1594. It would make little sense for Congress to mandate restitution for income under a chapter devoted to human trafficking but intend to exclude earnings from sex trafficking, one of the most common forms of human trafficking. *See United States v. Mammedov*, 304 F. App'x 922, 926-27 (2d Cir. 2008); *see also, e.g.*, *United States v. Robinson*, 508 F. App'x 867, 870-71 (11th Cir. 2013) (affirming a restitution award to a victim of sex trafficking of a minor for the victim's lost

7

earnings).

And fundamentally, every cent the defendant earned by prostituting D.L., G.R.L., and D.R. is recoverable.  D.L. was at most seventeen years old when the defendant began prostituting her.  G.R.L. was eighteen when the defendant began prostituting her.  D.R. was at most seventeen when the defendant began prostituting her.  They all suffered degradation and abuse at his hands; they are truly victims. *Mammedov*, 304 F. App'x at 926-27.  The defendant is not entitled to keep the money he made from exploiting these children/women simply because he exploited them for sex rather than for farm or domestic work.  At bottom, the money has already been earned.  The question is, who keeps it: the child who suffered or the trafficker who abused her? Section 1593 and simple justice easily answer that question.

To calculate the gross income of the victim's services, courts have permitted the government to use a "multiplier" method: the amount charged for the victim, multiplied by the rough number of clients she saw in a given time period, multiplied by the frequency of prostitution. *United States v. Webster*, Nos. 08-30311, 09-30182, 2011 WL 8478276, at *3 (9th Cir. Nov. 28, 2011).   The government considered the trial testimony, statements by the victims, and documentary evidence.

D.L. testified that she made approximately $500 per day in prostitution for Williams.  She also testified that she worked every day, in agencies, at "all-girl-staff" establishments, or on Backpage.com.  D.L. testified that she prostituted beginning from when she was 17 years' old for five years.  Conservatively estimating $500 per day, 6 days per week, for five years, creates a gross income of $780,000.   D.L. is entitled to this amount of restitution.  Nevertheless, assuming only half of that figure, as there were times that D.L. had left the defendant, then the government seeks a very conservative restitution award for the gross income received by the defendant from D.L.'s

services in the amount of $390,000.

G.R.L. testified that she made approximately $500 per day in prostitution for the defendant. She also testified that she worked five or six days' per week, either in agencies or on Backpage.com. G.R.L. testified that she prostituted beginning from when she was 18 years' old for approximately five months. Conservatively estimating $500 per day, 5 days per week, for six months, creates a gross income of $65,000. Nevertheless, assuming only half of that figure, as there were times that G.R.L. had left the defendant, then the government seeks a very conservative restitution award for the gross income received by the defendant from G.R.L.'s services in the amount of $32,500.

Victims, including D.L., G.R.L., as well as T.L., R.C. and K.C. testified that D.R. prostituted from the time she was 17 years old in 2007 until 2016. Police officers who testified at trial and attempted to solicited sex from D.R. in undercover prostitution stings in 2008 and 2012 each paid $200 and $120, respectively. As with D.L. and G.R.L., D.R. prostituted multiple times a day (upwards of 10 clients), six or seven days a week. Each client paid between $50 and $200. Conservatively estimating $100 per client, two clients per day, six days per week for 9 years, creates a gross income of $561,600. Nevertheless, assuming only half of that figure, as there were times that D.R. had left the defendant, then the government seeks a very conservative restitution award for the gross income received by the defendant from D.R.'s services in the amount of $280,800.

B. *The Victims are Entitled to Probable Future Medical Expenses Proximately Caused by the Offense Conduct.*

The "generous" restitution that victims are entitled to receive under § 2259 includes "future counseling expenses," *Johnson*, 680 F. App'x at 200 (citing *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001)), and future medical expenses, *United States v. Pearson*, 570 F.3d 480,

486 (2d Cir. 2009). These victims are entitled to both. It is unknown at this time what those expenses will be and the government would request this Court to set a restitution hearing in 90 days to determine these additional restitution values.

## CONCLUSION

Wherefore, this Court should enter an order, pursuant to 18 U.S.C. § 1593, directing the defendant to pay the following restitution to the D.L. in this case: $390,000 in lost earnings and an amount to be determined for future medical and counseling expenses, for a preliminary total of $390,000.

Wherefore, this Court should enter an order, pursuant to 18 U.S.C. § 1593, directing the defendant to pay the following restitution to the G.R.L. in this case: $32,500 in lost earnings and an amount to be determined for future medical and counseling expenses, for a preliminary total of $32,500.

Wherefore, this Court should enter an order, pursuant to 18 U.S.C. § 1593, directing the defendant to pay the following restitution to the D.R. in this case: $280,800 in lost earnings and an amount to be determined for future medical and counseling expenses, for a preliminary total of $280,800.

Wherefore the preliminary total amount of restitution owed is $703,300.

ARIANA FAJARDO ORSHAN
United States Attorney

*/s/ Gregory Schiller*
Gregory Schiller
Assistant United States Attorney
FL Bar No. 0648477
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33041
P: 561-209-1045
E: Gregory.Schiller@usdoj.gov

## CERTIFICATE OF SERVICE

This certifies that this motion and its exhibits have, this 5 day of March 2019, been electronically filed in the CMECF system.


/s/ Gregory Schiller
Gregory Schiller
Assistant United States Attorney