UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80053-CR-ROSENBERG

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ALSTON ORLANDO LEROY WILLIAMS,

    Defendant.
_____/

## DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

The defendant AlstonWilliams, through counsel, files the following objections to the presentence report (PSI):

1.    Page 2, "Arrest Date:" The arrest date should be November 29, 2017. Mr. Williams was in continuous custody on the instant charges from that date to the present.

2.    Paragraphs 5 and 6: The defendant denies the allegations of mortgage fraud outlined in paragraphs 5 and 6. Mr. Williams announced ready for trial on October 30, 2018 and the government immediately dismissed the charges.

3.    The defendant objects to all PSI content based upon allegations from alleged victims R.C., T.L. and K.C. The jury clearly rejected all of the charges in which they were alleged to be victims. Considering how adamant their testimony was at trial, an objective observer can only conclude that the jury found their testimony to be materially false and untrustworthy.

4. Paragraph 13: The women did not turn over all of their money to Mr. Williams. In fact, several of the alleged victims testified at trial that they kept money for themselves.

5. Paragraph 14: Mr. Williams did not direct R.C. to post ads on Backpage.com. R.C. freely and voluntarily posted her own ads.

6. Paragraph 16: The undercover funds were not recovered from Mr. Williams. R.C. took the money from the room and went to the vehicle. The money was recovered from R.C.

7. Paragraph 17: G.R.L. did very few domestic chores around the house. She had no cooking skills and was so bad at cleaning that the defendant would re-clean areas, or simply do the cleaning himself. G.R.L. was frequently by herself at the house. On several occasions she left the house of her own volition for days or weeks at a time.

8. Paragraph 18: R.C. frequently went shopping and purchased personal items (clothing, shoes, cellular phones, etc.) with her own money. While she did extract money and gifts from clients, one repeat client in particular, she did that on her own and of her own volition. The alleged victims gave some money to Mr. Williams for household expenses, but they also kept much of the money they earned and spent it on personal drugs, clothing, travel, etc. Mr. Williams did not give R.C. money to buy condoms. R.C. managed her own business expenses.

9. Paragraph 19, 20 and 21: Mr. Williams objects to R.C.'s allegations in this paragraphs. He denies that he abused and struck R.C. He denies that he ever

took any of the alleged victims into a garage and physically battered them. He never prevented R.C., or any of the alleged victims, from going to the hospital. In fact, testimony revealed that Mr. Williams took R.C. to the hospital when she was bitten by a spider.

10.     Paragraph 22: Mr. Williams denies all of paragraph 22 except for the last sentence.

11.     Paragraph 23: As shown by the evidence, the alleged victims left the residence at will and frequently. Whether for work, shopping, drug binges, etc., Mr. Williams never prevented them from leaving and always welcomed them back after their various sojourns. For example, D.L. would go off to use drugs in a trap house. R.C. would leave for weeks long vacations with one of her clients. D.R. left on at least one occasion to live with a boyfriend. G.R.L. left on numerous occasions to unknown locations. They all returned of their own free will and were taken back in by Mr. Williams.

12.     Paragraph 24: Mr. Williams did not force R.C. and G.R.L. to do manual labor in St. Thomas. They never cut logs. Both women were excited to go on the trip. They did almost nothing to help Mr. Williams fix the damage to his mother's house.

13.     Paragraph 25: As she had to admit at trial, R.C. knew that there were two, not three, "long guns in the home. In fact, she had one of them, the shotgun, in her room.

14. Paragraph 26: R.C. had her tattoo covered because she no longer liked D.L. and D.R. It had nothing to do with the 2014 incident. R.C. paid for her own breast enlargement and butt lift.

15. Paragraph 27: G.R.L. was introduced to prostitution by R.C.

16. Paragraph 28: Mr. Williams did not have sex with G.R.L. until she was 18 years old. He also specifically told her she could not act as a prostitute until she was an adult. Mr. Williams did not decide that G.R.L. had to get an abortion; it was a mutual decision.

17. Paragraph 29: While G.R.L. was living with her aunt, she contacted Mr. Williams on Facebook and asked him to come and pick her up. Upon learning that G.R.L.'s aunt had filed a missing person's report, Mr. Williams took G.R.L. to the Davie, Fla. Police department so that she could explain that she was well and acting of her own free will, which she did. Mr. Williams did not "have" G.R.L. work as an escort. She was eager to do so. If anything, he prevented her from doing so before she turned 18. R.C. was the one encouraging her to be an escort. In all, G.R.L. worked as a prostitute for approximately 2 and ½ months, until she discovered that she was not very good at it and quit. For the following two years she did nothing, but was supported and sheltered by Mr. Williams.

18. Paragraph 30: Mr. Williams never forced the women to post ads on Backpage. He encouraged them to do so, but there was no force. They did not give him all their money. R.C., who prided herself on her prostution skills, was more than willing to instruct the other women.

19. As the jury found, G.R.L. was not the defendant's slave.

20. Paragraph 32  D.R. did not work for Mr. Williams and did not give him all of her money.

21. Paragraph 33: Mr. Williams never hit G.R.L. with a "stick-like" object. He never hit her with an open hand causing bleeding. He never hit her vagina. She was not choked, tazed and stomped. The taser device was a novelty item; the power could be adjusted. The defendant and the women would, on occasion, shock each other as a prank. The Taser demonstrated in court by the government was not the taser used in the pranks. The taser admitted in evidence was stronger and was never used on anyone. Mr. Williams never took G.R.L. to the hospital because she was never hurt.

22. Paragraph 34: G.R.L. did leave the house multiple times. When she did, Mr. Williams never threatened her. In fact, when she left he had no way to contact her or know where she was until she would call and ask to be picked up. G.R.L. had three phones during the time she lived at the house.

23. Paragraph 36: All of the women had their own money when they were working. G.R.L. had her own money when she worked, but not when she didn't. Mr. Williams would often send money to the women after they left the house to help them get by. The women did burn through their money, buying drugs, plastic surgery, expensive clothing, shoes and gadgets. At one point, R.C. bought herself a Lexus automobile.

24. Paragraph 38: Mr. Williams first Had sex with D.L. the day she turned 18 and moved into his residence.

25. Paragraph 39: Mr. Williams never made any of the women get an abortion.

26. Paragraph 40: The defendant denies the entire paragraph.

27. Paragraph 41: D.L. was 18 years old when she began working as a prostitute.

28. Paragraph 43: Mr. Williams did not control the women. Each of them left the home on multiple occasions for extended periods. Each returned of her own free will. All were free to leave for good at any time. T.L., D.L., D.R. and K.C. each permanently left. After leaving, D.L., D.R. and T.L. remained friends with Mr. Williams. D.L. and D.R. asked to return. T.L. tried to assist Mr. Williams after his arrest and fully supported him until she was visited by the government and informed she could become a legal resident again if she cooperated with them.

29. Paragraph 44: D.L. was not afraid of mr. Williams, as evidenced by her continuing communications with him.

30. Paragraph 45: The defendant denies all of paragraph 45.

31. Paragraph 46: It was not Mr. Williams' idea for D.L. to work as an escort. She enjoyed working as an escort because her calls were managed by the service. She did not give all of her money to Mr. Williams.

32. Paragraph 49: D.L. was free to leave any time she wished. And she did. D.L. regularly left to work elsewhere. At one point, she was living with the

6

owner of her escort service. Other times, she just left to use drugs, coming back when needed support. Mr. Williams never threatened her or her family. In fact, the texts show that he had a very good relationship with D.L.'s mother.

33.   Paragraph 50: D.L. did not go home with Mr. Williams. Instead, Mr. Williams spoke with the police, left the location, and went home. The next day D.L. called him and asked him to pick her up and bring her home. When they got home mr. Williams did not assault her as she describes.

34.   Paragraph 51: Mr. Williams did not hit D.L. with a car or cut her with a knife. He did take a knife away from her once when she was cutting herself, which she often did.

35.   Paragraph 53: Mr. Williams never hit R.C. with a piece of bamboo.

36.   Paragraph 55: The defendant denies the entire paragraph.

37.   Paragraph 54: Mr. Williams took R.C. to the hospital for a spider bite.

38.   Paragraph 57: Again, the women came and went from the house as they pleased.

39.   Paragraph 62: Mr. Williams did not "traffic" T.L. She was a voluntary and willing prostitute. She actually worked on her own and did not reside with Mr. Williams.

40.   Paragraphs 64 - 66: The defendant denies the entire paragraphs.

41.   Paragraphs 68 - 70: The defendant denies the entire paragraphs.

42.   Paragraph 71: The defendant believed D.R. was 18 at the time, because she had shown him a false ID.

43. Paragraph 72: Mr. Williams denies he knew D.R. was under 18 when she was arrested.

44. Paragraph 77: Mr. Williams was not the only person in the house who knew the door code. D.R. and R.C. knew the code.

45. Paragraph 79: Mr. Williams denies that he ordered R.C. to go anywhere or that he threatened to harm her.

46. Paragraph 82: As the evidence showed, R.C. suggested using Wickr and Confide much more than the defendant.

47. Paragraphs 83 – 86: The defendant denies the allegations by Jason Wilson. Mr. Wilson is a heroin selling multiple felon, who is trying to get his most recent sentence reduced by telling the government what they want to hear.

48. Paragraph 91: The defendant objects to an offense level increase for obstruction.

49. Paragraphs: 99, 107, and 115: The defendant denies that the alleged victims sustained any injury.

50. Paragraph 129: Mr. Williams and his girlfriend had a fight. They were both pushing each other and she called the police.

51. Paragraph 130: Mr. Williams denies the facts as stated. Mr. Williams and Ms. Plunkett had an argument. She left and returned with the police. He never threatened her, held her in the bedroom, or snatched her phone.

52. Paragraph 155: Mr. Williams denies that he has been physically abusive toward Rachael Jimenez. He further denies that he tased her or their children.

53. Paragraph 156: Mr. Williams did not reside with D.R. at the time of his arrest.

>Respectfully submitted,
>
>MICHAEL CARUSO
>FEDERAL PUBLIC DEFENDER
>
>By: *s/Fletcher Peacock*
>Fletcher Peacock
>Assistant Federal Public Defender
>Florida Bar No. 441996
>109 North Second Street
>Fort Pierce, Florida 34950
>Tel: 772-489-2123
>E-Mail: Fletcher_Peacock@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on March 7, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/Fletcher Peacock*, AFPD
Fletcher Peacock

## SERVICE LIST

**UNITED STATES v. ALSTON ORLANDO LEROY WILLIAMS**
Case No. 18-80053-CR-ROSENBERG/HOPKINS
United States District Court, Southern District of Florida

**Fletcher Peacock**
**Fletcher_Peacock@fd.org**
**Assistant Federal Public Defender**
109 North Second Street
Fort Pierce, FL 34950
Tel: 772-489-2123
Fax: 772-489-3997
Attorney for Williams
Notices of Electronic Filing

**Gregory Schiller**
**gregory.schiller@usdoj.gov**
**Assistant United States Attorney**
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: 954-789-6285
Email: gregory.schiller@usdoj.gov
Notice of Electronic Filing

**Justin Hoover**
**jhoover@sa15.org**
**Special Assistant United States Attorney**
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: 561-355-7100
Notice of Electronic Filing