IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 18-CR-80053-RLR

UNITED STATES OF AMERICA

v.

ALSTON ORLANDO LEROY WILLIAMS

**GOVERNMENT'S AMENDED MOTION FOR RESTITUTION**

The United States of America, by and through the United States Attorney for the Southern District of Florida, moves this Court to enter an order in this case granting VICTIMS 1, 3 and 6 restitution in the preliminary amount of $773,600, and payable in full immediately. This amount is justified under 18 U.S.C. § 1593.

FACTUAL AND PROCEDURAL SUMMARY

This Court is very familiar with the facts of this case having presided over the three-week jury trial in December 2018. In brief, Alston Orlando Leroy Williams ("Williams") was indicted for trafficking women beginning in 2005. Williams trafficked VICTIM 4 from 2005 through 2014, VICTIM 1 from 2008 through 2012, VICTIM 6 from 2007 through 2016, VICTIM 2 from 2011 to 2017, VICTIM 3 from 2015 through 2017, and VICTIM 5 in 2015. After trial, a jury convicted Williams of sex trafficking of VICTIM 1 as a minor, sex trafficking of VICTIM 1 by force, fraud or coercion, sex trafficking of VICTIM 3, sex trafficking of VICTIM 6 as a minor, sex trafficking of VICTIM 1 by force, fraud or coercion and obstruction of a human trafficking investigation (DE 160).

VICTIMS 1, 3, and 6 are entitled to restitution.

ARGUMENT

**A. Restitution in Sex Trafficking Cases – TVPA and MVRA**

Congress enacted the Trafficking Victims Protection Act of 2000 (TVPA) to provide a comprehensive set of laws to combat human trafficking on the federal level. In relevant part, the Act criminalized commercial sex trafficking of adult victims by force, fraud and coercion. 18 U.S.C. § 1591. The TVPA has three objectives: (1) prevention of human trafficking; (2) prosecution of traffickers; and (3) protection of the victims. *See* Pub.L. No. 106-386, § 102(a), 114 Stat. 1488 (2000), codified as amended in 22 U.S.C. § 7101(a). The TVPA also created one of the most expansive mandatory restitution schemes under federal law, in an acknowledgment that: "[Full restitution] is critical to restoring [the trafficking] victim[s]' dignity, helping them gain power back from their exploiters who took advantage of their hope for a better life. [It] . . . attack[s] the greed of the trafficker and the idea of a human being as a commodity. It is a way to ensure that victims receive access to justice." *United States v. Sabhani*, 599 F.3d 215, 259-260 (2d Cir. 2010).

Congress has specifically authorized restitution for sex trafficking victims in 18 U.S.C. § 1593, and the court is empowered under 18 U.S.C. § 3663(a)(1) to require restitution whenever a defendant is convicted under Title 18, which includes the offense of conviction, 18 U.S.C. § 2421. *United States v. Harper*, 2017 WL 552631, at 2 (D. Kansas 02/10/2017).

Title 18, United States Code, Section 1593(a) requires this Court to "order restitution for any offense under this chapter," which includes the offenses of conviction in Counts 1, 2, 4, 9, 10, and 11 (DE 160). *See United States v. Fu Sheng Ko*, 620 F. 3d 1158, 1164 (9th Cir. 2010) (observing "the Trafficking Act mandates restitution that includes a defendant's ill-gotten gains"); *United States v. Webster*, 2011 WL 8478276, at *3 (9th Cir. 2011) (recognizing "[t]he statutory

language is clear that mandatory restitution includes not only the victims' actual losses, but also the defendant's illgotten gains"); *see also United States v. Baston*, 818 F. 3d 651, 665-66 (11th Cir. 2016) (affirming restitution award under 18 U.S.C. § 1593 for "money that the victim earned while prostituting for the defendant," and concluding that the district court erred in not awarding an additional $400,000 in restitution for extraterritorial trafficking conduct); *United States v. Cortes-Castro*, 511 Fed. App'x 942, 946 (11th Cir. 2013) (affirming district court's decision to order restitution in the amount of over $1.2 million in a sex trafficking case, noting that it was "mandated by statute"); *United States v. Mammedov*, 304 Fed. App'x 922, 927 (2d Cir. 2008) (stating that "the express terms of 18 U.S.C. § 1593 require that the victims in this case, *i.e.*, persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct") (emphasis in original).

### B. The TVPA Mandates Restitution for Sex Trafficking Victims Such as VICTIM 1, VICTIM 3, and VICTIM 6

United States Code, Title 18, Section 1593, provides that the Court "shall order restitution for any offense under this chapter." 18 U.S.C. §1593(a). The restitution order "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." Those losses are defined to include "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201) *et seq.*" *See* 1593(b)(1),(3). The amount of restitution to be paid must be proved by the government by a preponderance of the evidence. 18 U.S.C. § 1593(b)(2) ("an order of restitution under this section shall be issued and enforced in accordance with section 3664 . . . ."); 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of

3

the offense shall be on the attorney for the government."); "The preponderance standard should be applied in a practical, common-sense way." *See United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993). A restitution calculation may be supported by hearsay so long as the hearsay has sufficient indicia of reliability. *Id*.

Section 1593(b)(3) defines the victim's losses as the greater of the value rendered to the defendant *or* the value of the victim's labor as determined by the Fair Labor Standards Act. *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1164 (9th Cir. 2010) ("[T]he Trafficking Act mandates restitution that includes a defendant's ill-gotten gains"); see also *United States v. Webster*, No. 083-311, 2011 U.S. App. LEXIS 26438, *9 (9th Cir. 2011). Courts have most often used the "illgotten gains" concept in determining the amount of mandatory restitution in commercial sex trafficking context due to the difficulty in using the FLSA formulas in this type of labor. In calculating restitution pursuant to Section 1593, courts have used various methods to estimate the value of the victim's labor, including relying upon victims' sworn testimony about work they performed and prices charged for such work, and evidence of work performed gathered during the course of the government's investigation.

Regarding the proper calculation and determination of restitution, § 1593(b)(2) requires that any order of restitution be "issued and enforced in accordance with section 3664." Under 18 U.S.C. § 3664(e), the government bears the burden of establishing the victim's losses by a preponderance of the evidence. *See United States v. Hasson*, 333 F. 3d 1264, 1276 n.14 (11th Cir. 2003). "The amount of restitution can be determined on the basis of evidence heard during trial, undisputed statements in the Presentence Investigation Report, or evidence presented at the sentencing hearing." *United States v. Roberts*, 464 Fed. App'x 796, 802 (11th Cir. 2012); *see also Robinson*, 508 Fed. App'x at 871 (affirming restitution order for sex trafficking victim based upon

trial testimony that "revealed the amount charged for [the victim's] services and the amount of time she worked for [the defendant]").

This Court "need only estimate, based on facts in the record, the victims' losses with some reasonably certainty." *Webster*, 2011 WL 8478276, at *3 (citing *United States v. Doe*, 488 F. 3d 1154, 1160 (9th Cir. 2007) (internal quotation marks omitted)). "'So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution.'" *United States v. Futrell*, 209 F. 3d 1286, 1292 (11th Cir. 2000) (quoting *United States v. Savoie*, 985 F. 2d 612, 617 (1st Cir. 1993)); *see also United States v. Palmer*, 643 F. 3d 1060, 1067-68 (8th Cir. 2011) (affirming award of $200,000 to a sex trafficking victim and noting that "the district court was only required to make a reasonable estimate, not establish the victim's future treatment costs with certainty"). The amount of restitution need not "be proven with exactitude" because "determining the dollar amount of a victim's losses attributable to the defendant will often be difficult" and "such a determination will inevitably involve some degree of approximation. . . ." *In re Sealed Case*, 702 F. 3d 59, 66 (D.C. Cir. 2012).

For instance, in *United States v. Charles Nash*, CR12-23 RSM, Judge Martinez's restitution figures were based upon the sworn grand jury testimony of the defendant's sex trafficking victims, corroborated by Backpage.com advertisements and hotel records, about the length of time they performed sex work for the defendant, the average number of clients they had per day, and the average price charged per client. The restitution figures were not exact accountings of the work performed and the prices charged, but rather the Court's best estimation based upon the evidence.

This method of calculating restitution subsequently was affirmed by the Ninth Circuit. *See United States v. Nash*, 558 Fed. Appx. 741, 742 (9th Cir. 2014) ("the district court did not err by

5

relying on the victims' sworn statements and the corroborating extrinsic evidence to establish the amounts earned and the time periods during which the victims were under Nash's control. The district court appropriately estimated, based upon the facts in the record, the victims' losses with some reasonable certainty."). *See also* Webster at *9 (multiplying the number of weeks trafficked times the average number of days worked per week times the average number of dates per day times $150, the minimum amount charged per date); *United States v. Lewis*, 791 F. Supp. 2d 81, 92 (D.D.C. 2011) (calculating value of victim S.H.'s services as $400 x 914, the average amount (between $300 and $500) earned by one victim for the number of days (914) she worked for defendant, resulting in $365,600 recoverable as ill-gotten gains).

### C. Restitution Demands and Burden of Proof

The government seeks restitution for the victims' lost earnings as a result of this case. These victims are entitled to *mandatory* restitution in "the full amount of the victim's losses." 18 U.S.C. § 1593. Section 1593 defines the "full amount of the victim's losses" to include "the gross income or value to the defendant of the victim's services or labor." *Id.* § 1593(b)(3). It also includes all restitution recoverable under 18 U.S.C. § 2259, such as "any costs incurred by the victim for . . . medical services relating to physical, psychiatric, or psychological care," "lost income," and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3). In other words, the victim is entitled to (1) the defendant's ill-gotten gains plus (2) any losses she incurred, including the cost of past and future medical or psychological care. *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012).

The government must establish a restitution amount by a preponderance of the evidence. 18 U.S.C. § 3664(e). The calculation need not be perfect. "Rather, the government must establish the amount of the victim's loss with 'reasonable certainty.'" *United States v. Johnson*, 680 F.

App'x 194, 200 (4th Cir. 2017) (quoting *United States v. Laney*, 189 F.3d 954, 967 n.14 (9th Cir. 1999)). "[S]ome degree of approximation' is acceptable," and courts should "resolve uncertainties with a view towards achieving fairness to the victim." *United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012) (quoting *United States v. Monzel*, 641 F.3d 528, 540 (D.C. Cir. 2011)) (quotation marks omitted).

"Moreover, when determining the appropriate amount of restitution, courts have determined that they 'may consider hearsay evidence that bears minimal indicia of reliability so long as the defendant is given an opportunity to refute that evidence.'" *Johnson*, 680 F. App'x at 200 (quoting *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997)) (accepting a letter from the victim's guardian relaying the consensus opinion among the victim's counselors about her likely future counseling needs).

### D. Restitution Sought for VICTIM 1, VICTIM 3, and VICTIM 6 - *the Gross Income the Defendant Received from Trafficking Them.*

The victims are entitled to the gross income of the money the defendant made prostituting the victims. 18 U.S.C. § 1593(b)(3). The fact that those earnings came from prostitution does not change that conclusion. The statute states unequivocally that restitution "shall . . . include the . . . gross income . . . to the defendant of the victim's services" and further requires courts to "order restitution for *any offense under this chapter*." 18 U.S.C. § 1593(a), (b)(3) (emphasis added).

Chapter 77 includes sex trafficking and conspiracy to commit sex trafficking. *Id.* §§ 1591, 1594. It would make little sense for Congress to mandate restitution for income under a chapter devoted to human trafficking but intend to exclude earnings from sex trafficking, one of the most common forms of human trafficking. *See United States v. Mammedov*, 304 F. App'x 922, 926-27 (2d Cir. 2008); *see also, e.g.*, *United States v. Robinson*, 508 F. App'x 867, 870-71 (11th Cir. 2013)

(affirming a restitution award to a victim of sex trafficking of a minor for the victim's lost earnings).

And fundamentally, every cent the defendant earned by prostituting VICTIM 1, VICTIM 3, and VICTIM 6 is recoverable. VICTIM 1 was sixteen or seventeen years old when the defendant began prostituting her (DE 242:96-99). VICTIM 3 was eighteen when the defendant began prostituting her (DE 243:32). VICTIM 6 was at most seventeen when the defendant began prostituting her (DE 242:105). They all suffered degradation and abuse at his hands; they are truly victims. *Mammedov*, 304 F. App'x at 926-27. The defendant is not entitled to keep the money he made from exploiting these children/women simply because he exploited them for sex rather than for farm or domestic work. At bottom, the money has already been earned. The question is, who keeps it: the child who suffered or the trafficker who abused her? Section 1593 and simple justice easily answer that question.

To calculate the gross income of the victim's services, courts have permitted the government to use a "multiplier" method: the amount charged for the victim, multiplied by the rough number of clients she saw in a given time period, multiplied by the frequency of prostitution. *United States v. Webster*, Nos. 08-30311, 09-30182, 2011 WL 8478276, at 3 (9th Cir. Nov. 28, 2011). The government considered the trial testimony, statements by the victims, and documentary evidence.

### 1. Restitution for VICTIM 1

At trial, VICTIM 1 testified in great detail about her victimization. VICTIM 1 was trafficked by Williams starting in 2007 or 2008, when she was sixteen or seventeen years old (DE 242:256-57). When VICTIM 1 turned seventeen, she was engaging in prostitution dates once or twice a week; but when she turned eighteen, she increased to "pretty much every day" (DE

242:100). VICTIM 1 testified that she worked for Williams through prostitution agencies and made from $500-1,000 per day; Williams kept all of that money (DE 242:121-23). VICTIM 1 worked through the agencies starting at age nineteen and continued until she left Williams at age twenty-one in September 2012 (DE 242:100, 124, 193). VICTIM 1 also worked at "in-call places," which are essentially brothels (DE 242:136). VICTIM 1 worked at these places on weekends for about three years and would make about $1,000 on average per weekend (DE 242:138). In addition to the agencies and "in-call places," VICTIM 1 also worked through online advertisements on websites like Backpage.com (DE 242:138).

VICTIM 1 testified at trial that in her estimation, she earned for Williams around one million dollars (DE 242:148). This estimate came from the fact that, on average, she earned $500 per day, and Williams trafficked her for around five years (DE 242:148)[1]. Conservatively, $500 per day, for six days per week, for five years, comes out to $780,000.

Because there were times that VICTIM 1 left Williams, though infrequently, the United States is conservatively moving this Court to order Williams to pay $522,600 restitution in favor of VICTIM 1, which is two-thirds the amount calculated above.

 2. <u>Restitution for VICTIM 3</u>

VICTIM 3 also testified about her victimization and how much money she earned for Williams through prostitution. VICTIM 3 worked through the agencies and made around $500 per night while working five or six days per week (DE 243:37-38). VICTIM 3 worked in prostitution for about three months in 2015 (DE 243:47, 152-156), from around May until around August (DE 243:152). Conservatively, if VICTIM 3 worked five days per week for twelve weeks, and made $500 per day, she would have earned for Williams a total of $30,000.

---

[1] $500 per day for five years would actually equal $912,500.

9

The United States is thus moving this Court to order Williams to pay $30,000 restitution to VICTIM 3

   3. *Restitution for VICTIM 6*

Several witnesses testified to Williams' exploitation and trafficking of VICTIM 6. VICTIM 1 testified that she was with Williams when VICTIM 6 came into the fold; VICTIM 6 was seventeen years old at the time (DE 242:105). VICTIM 6 started working in prostitution for Williams immediately and continued to do so the entire time VICTIM 1 was with Williams, which was around five years (DE 242:105-06). The money VICTIM 6 made through prostitution also went to Williams (DE 242:106). VICTIM 4 testified that VICTIM 6 prostituted for Williams through at least the fall of 2014 because VICTIM 6 was still with Williams when VICTIM 4 stopped prostituting for him (239:277). VICTIM 6 was still doing prostitution dates with VICTIM 2 in November of 2016 (DE 240:220). VICTIM 6 made a significant amount of money for Williams over that time. For instance, in one arrangement between VICTIM 6 and undercover detective Edgardo Ramos of the Hollywood Police Department, VICTIM 6 agreed to accept $200 for one prostitution date when she was seventeen years old in April of 2008 (DE 240:106-12). During another undercover operation, VICTIM 6 and VICTIM 2 agreed to have sex with undercover detective Justin Shaw of the Osceola County Sheriff's Office for $300 (DE 241:251).

VICTIM 1 said that she would have on average four dates per day when she was working for Williams (DE 242:122-23). VICTIM 4 (the victim of Count 6 and 7 of the Superseding Indictment) testified that on average she would see seven clients per day when working for the agencies and as many as twenty in a day (DE 239:213-14). VICTIM 2 (the victim of Count 3 of the Superseding Indictment) also testified that she could see as many as twenty clients per day, though some days it would be less (DE 240:261-62). When VICTIM 5 (the victim of Count 8 of

the Superseding Indictment) was working for Williams, she saw between five and nine clients per day and most of them involved sex for money (DE 244:150). While VICTIM 3 was prostituting for Williams, she saw four clients on an average night, but could see anywhere from one to over five (DE 243:46-47).

VICTIM 6 worked in prostitution for Williams from at least April 2008 until November 2016. If VICTIM 6 saw only two clients per day at $100 each, five days per week, for that time period, then she would have earned $442,000 for Williams. In reality, this is a very conservative sum and the actual amount is certainly much higher.

The United States is moving this Court to order Williams to pay $221,000 (half the conservative amount above) in restitution to VICTIM 6

## CONCLUSION

Wherefore, the United States moves this Court to order Williams to pay the following restitution amounts pursuant to 18 U.S.C. § 1593:

$522,600 to VICTIM 1
$30,000 to VICTIM 3
$221,000 to VICTIM 6

Therefore, the total amount of restitution owed is $773,600.

ARIANA FAJARDO ORSHAN
United States Attorney

*/s/ Gregory Schiller*  
Gregory Schiller  
Assistant United States Attorney  
FL Bar No. 0648477  
500 S. Australian Ave., Suite 400  
West Palm Beach, FL 33041  
P: 561-209-1045  
E: Gregory.Schiller@usdoj.gov  

*/s/ Justin Hoover*  
Justin Hoover  
Assistant United States Attorney  
FL Bar No. 092450  
101 South U.S. 1, Suite 3100  
Ft. Pierce, FL 34950  
P: 772-293-0943  
E: Justin.Hoover@usdoj.gov

## CERTIFICATE OF SERVICE

This certifies that this amended motion have, this 15 day of July 2019, been electronically filed in the CMECF system.

*/s/ Gregory Schiller*
Gregory Schiller
Assistant United States Attorney