UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-CR-80053-RLR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALSTON ORLANDO LEROY WILLIAMS,

    Defendant.

_____/

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING RESTITUTION OWED TO VICTIMS 1, 3, and 6

This cause is before the Court on the Government's Amended Motion for Restitution. Mot., DE 267. The Defendant has responded, *see* Resp., DE 270, and the Government has replied in support of its Motion, *see* Reply, DE 271. The Court also heard oral argument on the Motion on July 26, 2019.

Alston Orlando Leroy Williams ("Williams") was indicted for trafficking several women beginning in 2005. Superseding Indictment, DE 25. After trial, the jury convicted Williams of sex trafficking of Victim 1 as a minor; sex trafficking of Victim 1 by force, fraud or coercion; sex trafficking of Victim 3 by force, fraud or coercion; sex trafficking of Victim 6 as a minor; sex trafficking of Victim 6 by force, fraud or coercion; and obstruction of a human trafficking investigation. Verdict, DE 160. Victim 1 was sixteen or seventeen years old when the Defendant began prostituting her. Trial Tr. Vol. VI, DE 242, 96-99. Victim 3 was eighteen when the defendant began prostituting her Trial Tr. Vol VII, DE 243, 32. Victim 6 was at most seventeen when the

defendant began prostituting her Trial Tr. VI, DE 242, 105. Victim 1, 3, and 6 are entitled to restitution pursuant to the Trafficking Victims Protection Act of 2000 ("TCPA"), 18 U.S.C. § 1593.

Title 18, United States Code, Section 1593(a) *requires* this Court to "order restitution for any offense under this chapter," which includes the offenses of conviction in Counts 1, 2, 4, 9, 10, and 11. Verdict, DE 160. *See, e.g.*, *United States v. Cortes-Castro*, 511 Fed. App'x 942, 946 (11th Cir. 2013) (affirming district court's decision to order restitution in the amount of over $1.2 million in a sex trafficking case, noting that it was "mandated by statute"). The Court's restitution order "shall direct the defendant to pay the Victim . . . the full amount of the Victim's losses." 18 U.S.C § 1593. Those losses are defined to include "the greater of the gross income or value to the defendant of the Victim's services or labor or the value of the Victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201) *et seq*." *Id.* §§ 1593(b)(1),(3).

The amount of restitution to be paid must be proved by the government by a preponderance of the evidence. 18 U.S.C. § 1593(b)(2) ("an order of restitution under this section shall be issued and enforced in accordance with section 3664 . . . ."); 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a Victim as a result of the offense shall be on the attorney for the government."). *See also United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993) ("The preponderance standard should be applied in a practical, common-sense way."). "The amount of restitution can be determined on the basis of evidence heard during trial, undisputed statements in the Presentence Investigation Report, or evidence presented at the sentencing hearing." *United States v. Roberts*, 464 Fed. App'x 796, 802 (11th Cir. 2012); *see also United States v. Robinson*, 508 F. App'x 867, 871 (11th Cir. 2013) (affirming

restitution order for sex trafficking victim based upon trial testimony that "revealed the amount charged for [the victim's] services and the amount of time she worked for [the defendant]").

This Court "need only estimate, based on facts in the record, the victims' losses with some reasonable certainty." *United States v. Webster*, Case No. 08-30311, 09-30182, 2011 WL 8478276, at *3 (9th Cir. 2011) (citations omitted). "So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." *United States v. Futrell*, 209 F. 3d 1286, 1292 (11th Cir. 2000) (internal quotations omitted); *see also United States v. Palmer*, 643 F. 3d 1060, 1067-68 (8th Cir. 2011). The amount of restitution need not "be proven with exactitude" because "determining the dollar amount of a victim's losses attributable to the defendant will often be difficult" and "such a determination will inevitably involve some degree of approximation. . . ." *In re Sealed Case*, 702 F. 3d 59, 66 (D.C. Cir. 2012). "[S]ome degree of approximation' is acceptable," and courts should "resolve uncertainties with a view towards achieving fairness to the victim." *United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012) (citations omitted).

Victims of sex trafficking are entitled to mandatory restitution in "the full amount of the victim's losses." *Id.* § 1593(b)(3). This includes "the gross income or value to the defendant of the victim's services or labor" and all restitution recoverable under 18 U.S.C. § 2259, such as "any costs incurred by the victim for . . . medical services relating to physical, psychiatric, or psychological care," "lost income," and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3).

Here, the Government seeks only the victims' lost earnings as a result of Defendant's conduct. The Government relies on the victims' trial testimony, which was under oath and subject

to cross examination by Defendant's lawyers, to support their requests on behalf of the victims for restitution.

    A. Restitution as to Victim 1

At trial, Victim 1 testified in great detail about her victimization. Victim 1 was trafficked by Williams starting in 2007 or 2008, when she was sixteen or seventeen years old. Trial Tr. Vol. VI, DE 242, 256-57. When Victim 1 turned seventeen, she was engaging in prostitution dates once or twice a week; but when she turned eighteen, she increased to "pretty much every day." *Id.* at 100. Victim 1 testified that she worked for Williams through prostitution agencies and made from $500-1,000 per day, and Williams kept all of that money. *Id.* at 121-23. Victim 1 worked through the agencies starting at age nineteen and continued until she left Williams at age twenty-one in September 2012. *Id.* at 100, 124, 193. Victim 1 also worked at "in-call places," which are essentially brothels. *See id.* at 136). Victim 1 worked at these places on weekends for about three years and would make about $1,000 on average per weekend. *Id.* at138. In addition to the agencies and "in-call places," Victim 1 also worked through online advertisements on websites like Backpage.com. *Id.* at 138-139.

Victim 1 testified at trial that in her estimation, she earned for Williams around one million dollars. *Id.* at 148:11-18. This estimate came from the fact that, on average, she earned $500 per day, and Williams trafficked her for around five years *Id.* ("Q: Did you ever try to figure out how much money you made him? A: Yes. Q: What did you figure? A: a million. Q: Based on what? A: $500 a day for five years.")[1]. Conservatively, $500 per day, for six days per week, for five years, amounts to $780,000. Because there were times that Victim 1 left Williams, though infrequently,

---

[1] $500 per day for five years equals $912,500.

the Government moved the Court to order defendant to pay $522,600 restitution in favor of Victim 1, which is two-thirds the amount calculated above.

The undersigned presided over the trial, heard Victim 1's testimony firsthand, and has reviewed the relevant portions of the transcript in considering the Government's Motion. Based on the Court's observations and review of the record, the Court credits Victim 1's testimony and agrees that she is entitled to restitution in the amount of **$522,600**.

Defendant argues that this amount should be discounted by an offset for Victim 1's living expenses. Defendant's argument is based primarily on *United States v. Baston*, 818 F.3d 651 (11th Cir. 2016). There, the Eleventh Circuit affirmed the District Court's calculation of restitution, which included an offset of $500 per week for the living expenses provided by the defendant to a trafficking victim. *Id.* While the Eleventh Circuit affirmed the District Court's calculations, the court did *not* consider whether such an offset was legally required, because the defendant did not challenge "the math" on appeal. *Id.* at 665. The Court has not found any case law to suggest that this kind of offset is required by law, and the Court does not find that it is warranted in this case.

B.  Restitution as to Victim 3

Victim 3 also testified about her victimization and how much money she earned for Williams through prostitution. Victim 3 worked through the agencies and made approximately $500 per night while working five or six days per week. Trial Tr. Vol VII, DE 243, 37-38. Victim 3 worked in prostitution for about three months in 2015 from around May until around August. *Id.* at 47, 152-156. If Victim 3 worked five days per week for twelve weeks, and made $500 per day, she would have earned for Williams for a total of $30,000. The United States has thus moved this Court to order Williams to pay $30,000 restitution to Victim 3.

Based on the Court's observations and review of the record, the Court credits Victim 3's testimony and agrees that she is entitled to restitution in the amount of **$30,000**. For the reasons stated above, the Court declines to offset this amount by any living expenses purportedly paid for by Defendant.

### C. Restitution as to Victim 6

The Court begins by addressing the Defendant's argument that Victim 6 is not seeking restitution and therefore the Court should not award restitution on her behalf. *See* Resp., DE 270. At the hearing on restitution, the Defendant also presented a witness, Marlin Johnson, an investigator for the Federal Public Defender's Office, who testified that Victim 6 did not want restitution awarded to her. Mr. Johnson explained that he had communicated with Victim 6 via text message, email, and one or two phone calls over the life of this case. In particular, Mr. Johnson presented an email, allegedly sent by Victim 6 to Mr. Johnson, claiming that she did not want restitution. The email was admitted into evidence as the Government's Exhibit 1. Mr. Johnson and Defendant did not present a sworn statement from Victim 6 declining restitution nor did they present paperwork regarding her position on restitution that the Public Defender's Office had sent to her to complete. In addition, Mr. Johnson acknowledged that he had never advised Victim 6 of the amount of restitution to which she might be entitled. Even if the Court were to credit this evidence and to assume that Victim 6 does not want restitution, the Court must award restitution.

Section 1593 instructs that the Court "*shall* order restitution for *any* offense under this chapter." 18 U.S.C. § 1593(a). Here, the jury found the Defendant guilty of two counts of trafficking Victim 6 pursuant to Section 1591 of the same chapter. *See* Verdict, DE 160. The plain language of Section 1593 does not contemplate the victim's position on restitution and does not

6

afford the Court discretion to decide not to order restitution in this case. *Cf. United States v. Johnson*, 378 F.3d 230 (2d Cir. 2004).

In *Johnson*, the Second Circuit Court of Appeals considered whether the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, permitted the district court to order restitution for a victim who declined it. *See Johnson*, 378 F.3d 230. The *Johnson* court concluded that restitution was required regardless of the victim's consent to or refusal of such restitution:

> [A] district court may—indeed, must—impose orders of restitution on defendants convicted of crimes identified in the MVRA even if their victims decline restitution. To hold otherwise would be inconsistent with the MVRA's statutory scheme of mandatory restitution, and it would undermine the power of the criminal justice system to punish defendants, where appropriate, through orders of restitution. . . .
>
> Our conclusion that § 3663A requires restitution regardless of the consent of victims is consistent with our long-held understanding of the purposes of restitution, which include not only the compensation of victims, but also the punishment of offenders. In view of these two purposes of restitution and the explicit language of the MVRA rejecting any exceptions to the requirement of restitution drawn from "any other provision of law," we conclude that defendants' victims may not veto the obligation of the District Court to impose orders of restitution.

*Id.* at 244-245 (citations omitted).

The MVRA contains similar language to the TVPA, including the use of the verb "shall" in relation to the Court's obligation to award restitution. *Compare* 18 U.S.C. § 1593 ("Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalties authorized by law, the *court shall order restitution* for any offense under this chapter.") *with* 18 U.S.C. § 3663A ("Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the *court shall order*, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense…") (emphasis added). Accordingly, the Court finds *Johnson* instructive, and the Court agrees with the Second Circuit's analysis that

7

restitution under the MVRA, like the TVPA, is required, regardless of a victim's disinterest in receiving such restitution.

Having concluded that restitution must be awarded to Victim 6, the Court turns to calculating the amount of restitution she is owed. Several witnesses testified to Williams' exploitation and trafficking of Victim 6, who the government did not call as a witness, and whom the defense listed as a witness but did not call to testify. Victim 1 testified that she was with Williams when Victim 6 came into the fold; Victim 6 was seventeen years old at the time. Trial Tr. Vol VI, DE 242, 105. Victim 6 started working in prostitution for Williams immediately and continued to do so for the five years that Victim 1 was with Williams. *Id.* at 105-06. The money Victim 6 made through prostitution also went to Williams. *Id.* Victim 4 testified that Victim 6 prostituted for Williams through at least the fall of 2014, because Victim 6 was still with Williams when Victim 4 stopped prostituting for him. Trial Tr. Vol. III, DE 239, 277. Victim 6 was still doing prostitution dates with Victim 2 in November of 2016. Trial Tr. Vol IV, DE 240, 220. Victim 6 made a significant amount of money for Williams over that time. For instance, in one arrangement between Victim 6 and an undercover detective of the Hollywood Police Department, Victim 6 agreed to accept $200 for one prostitution date when she was seventeen years old in April of 2008. *Id.* at 106-12. During another undercover operation, Victim 6 and Victim 2 agreed to have sex with an undercover detective of the Osceola County Sheriff's Office for $300. Trial Tr. Vol V, DE 241, 251.

Victim 1 said that she would have on average four dates per day when she was working for Williams. Trial Tr. Vol. VI, DE 242, 122-23. While Victim 3 was prostituting for Williams, she saw four clients on an average night, but could see anywhere from one to more than five. Trial Tr. Vol VII, DE 243, at 46-47.

Victim 6 worked in prostitution for Williams from at least April 2008 until November 2016. If Victim 6 saw only two clients per day at $100 each, five days per week, for that time period, then she would have earned approximately $442,000 for Williams. This amount likely is a conservative estimate, based on the entirety of the evidence the Court heard at trial. However, to further account for the fact that these figures are estimates, the United States moved this Court to order Williams to pay $221,000 (half of the amount above) in restitution to Victim 6.

Based on the Court's observations and review of the record, the Court credits the victims' testimony and agrees that Victim 6 is entitled to restitution in the amount of **$221,000**. For the reasons stated above, the Court declines to offset this amount by any living expenses purportedly paid for by Defendant.

For all of the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that restitution is required in this case as follows:

1. Defendant is ordered to pay restitution to **Victim 1 in the amount of $522,600**;

2. Defendant is ordered to pay restitution to **Victim 3 in the amount of $30,000**; and

3. Defendant is ordered to pay restitution to **Victim 6 in the amount of $221,000**.

4. Total restitution is therefore **$773,600**.

5. The Court will issue an amended judgment, consistent with this Order.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 4th day of February, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record